573 So.2d 495 (1990)
Carolyn Diane MURRAY
v.
Felix R. SAPP, Circle, Inc., The Travelers Insurance Co., and Allstate Insurance Company.
No. 89 CA 0814.
Court of Appeal of Louisiana, First Circuit.
August 29, 1990.
*496 Mary E. Heck Barrios, Baton Rouge, for plaintiff-appellee.
John O. Kopynec, Baton Rouge, for defendants-appellants Felix R. Sapp, et al.
Before LOTTINGER, CRAIN and FOIL, JJ.
CRAIN, Judge.
Carolyn Diane Murray was injured in an automobile accident when the car which she was driving was broadsided by a vehicle driven by Felix R. Sapp. She instituted this action against Sapp; his insurer, The Travelers Insurance Company (Travelers); Circle, Inc., Sapp's employer; and Allstate Insurance Company (Allstate) the insurer of the Murray vehicle. On motion of Mrs. Murray, Allstate was dismissed as a party defendant. Remaining defendants stipulated to liability (not causation) and the fact that Mrs. Murray suffered TMJ (transmandibular joint dysfunction).
After trial on the merits the trial court rendered judgment in favor of plaintiff for the sum of $161,915.51. From this judgment defendants appeal alleging as error quantum, the failure of the trial court to maintain defendants' exception of no cause of action and nonjoinder of a necessary party regarding the award of property damages; and the failure of the trial court to exclude the testimony of a witness (Mr. Jerry Cutrer). Plaintiff answered the appeal and alleged as error the failure of the trial court to award special damages for loss of future earnings and earning capacity.

QUANTUM

a) General Damages
In the first assignment of error defendants contend that the trial court erred in awarding general damages for pain and suffering in the sum of $125,000.
In written reasons for judgment the trial court found that plaintiff suffered TMJ and cervical sprain; plaintiff had suffered excruciating pain due to her injuries; plaintiff will continue to experience intermittent pain in the future.
On October 10, 1986, plaintiff was examined by Dr. James Ourso, her family dentist, complaining of pain in the left jaw and face, headaches and popping of the jaw. Dr. Ourso testified that plaintiff had no TMJ symptoms prior to the accident. He referred her to Dr. Michael J. Kadair, a general dentist who specializes in treatment of TMJ. Dr. Kadair was accepted by the court as an expert in that field. Dr. Kadair first examined plaintiff on October 23, 1986. Upon examination Dr. Kadair detected a grating noise at the left jaw joint; plaintiff's neck was stiff and sore; muscle spasms; and a limited ability to open the mouth. He diagnosed plaintiff to be suffering from TMJ with associated myofacial pain (pain of the face, head and neck). The treatment plan which Dr. Kadair recommended was the use of a bite appliance, in order to relieve pressure of the jaw joint and equilibration, which entails reshaping and repositioning the teeth and balancing the bite in order to distribute the force evenly among the teeth, muscles, and jaw joint.
Dr. Kadair testified that 95% of TMJ patients require ten to twelve office visits to correct the TMJ. At the time of trial plaintiff had made more than forty required office visits; was still undergoing equilibration which would require approximately three years of restorative dental work. In Dr. Kadair's opinion once the restorative dental work and equilibration are completed plaintiff will probably be *497 able to live a normal life and will remain essentially pain free so long as she wears the splint at night.
Dr. Thomas J. Kiebach, a pediatric dentist and orthodontist performed orthodontic work on plaintiff at the request of Dr. Kadair. He treated plaintiff from March 23, 1987, to August 15, 1987. Braces were mounted on the lower left cuspids and bicuspids in order to accommodate a bridge between the lower left bicuspids. Dr. Kiebach testified that he accepted plaintiff as his patient because in his opinion plaintiff was suffering excruciating pain and appeared to have serious complications. He stated that TMJ pain was excruciating and often debilitating because the patient can get no rest from the pain. In his opinion plaintiff sincerely wanted to get better, she was not malingering.
Plaintiff was treated by Dr. Charles Strange, orthopedic surgeon, for the flexion-extension injury of the cervical and lumbar spine (whiplash) which resulted from the accident. He initiated treatment of plaintiff on July 14, 1986. He stated that at the time of trial she was 95% recovered. In his opinion the soft tissue injury was chronic and plaintiff will continue to experience periodic pain in the neck or lower back. Such pain could be reduced with exercise and by avoiding sitting for long periods of time with the neck flexed.
Plaintiff also sought psychiatric help from Dr. Phillip Louis Cenac, psychiatrist. Dr. Cenac initially saw plaintiff on June 22, 1987, and periodically thereafter for a total of six visits. He was treating plaintiff for depression and anxiety caused by the unremitting pain and by the lack of improvement of her physical condition.
The award made by the trier of fact should not be set aside unless the award for the particular injuries suffered by a particular person is a clear abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La. 1979). After careful review of the record and in light of the overwhelming evidence which indicated that plaintiff suffered severe unremitting pain and that she can expect periodic pain from both the TMJ and the flexion-extension injury for the rest of her life, we find no abuse of the much discretion of the trial court in awarding plaintiff general damages in the sum of $125,000.

b) Medical and Prescription Expenses
In the fifth assignment of error defendants contend that the trial court erred in awarding $1,512 for future prescription expenses for medication ordered by Dr. Kadair. In the sixth assignment of error defendants allege the trial court erred in awarding $415 for past medical expenses with Dr. Cenac, $1,440 for future medical care with Dr. Cenac and $1,095 for future prescription expenses.
Dr. Kadair testified that TMJ in conjunction with cervical injuries may tend to aggravate each other and Feldene is an effective pain reliever for both of those problems. Plaintiff was taking Feldene at the time of trial. Although Dr. Kadair had not prescribed Feldene he was aware that plaintiff was using it and agreed with her use of it. Feldene costs $42.00 per month and plaintiff will probably have to use it at least until her TMJ therapy is complete (3 years).
The trial court determined that plaintiff substantiated her claim for past medical expenses in the amount of $7,128.51, which amount included the $415 incurred by her for psychiatric treatment. The trial court obviously concluded that this treatment was needed for the depression and anxiety that plaintiff suffered as a result of the automobile accident. Furthermore, the testimony of Dr. Cenac unequivocally established that while plaintiff will be undergoing the restorative dental work and equilibration she will benefit from taking Buspar (an anti-anxiety medication) and consequently will require periodic psychiatric visits to monitor her progress, at $120 per hour four times a year for the next three years. The Buspar costs $33.72 per one hundred, to be taken one tablet three times a day. The trial court awarded $1,440 for future medical expenses with Dr. Cenac and $1,095 for future prescription medication expenses.
*498 After careful review of the record we find that the past and future medical expenses were adequately supported by the record and find no clear abuse of the trial court's discretion.

c) Clean-up Expenses
Defendants contend that the cost of these services are inflated. They further argue that yard work and similar exercise is beneficial to plaintiff's condition, thus she should perform these services herself.
Mrs. Murray testified that prior to the accident she did her own yard work and cleaned her own beauty shop. Since the accident she has paid to have those services performed because she has been unable to continue doing so. She testified that she pays $15.00 per week for janitorial services and $22.00 per week for yard work. The court awarded the sum of $5,458 for past expenses and $8,190 for future expenses.
The damages awarded by a trial court should not be set aside absent an abuse of discretion. Reck, 373 So.2d at 501. After careful review of the record we find no such abuse herein.

PROPERTY DAMAGE
Allstate was originally made a party defendant in this action. The repair estimate on the plaintiff's vehicle was $2,192.89. Prior to trial Allstate paid plaintiff $2,092.89 (the amount of damage less the $100 deductible). Plaintiff and Allstate entered into a conventional subrogation agreement to the extent of the amount paid. Allstate was subsequently dismissed from the suit. Plaintiff sought to recover from remaining defendants the property damage to her vehicle which included the $2,092.89 previously paid by Allstate.
Prior to trial remaining defendants raised the objections of no cause of action and nonjoinder of a necessary party. The exceptions were referred to the merits. The trial court awarded to plaintiff property damages in the sum of $2,092.89.
La.C.C.P. art. 697 provides that when an incorporeal right has been subrogated, the right shall be judicially enforced by the subrogor and subrogee when the subrogation is partial; and by the subrogee when the entire right is subrogated.
This court has held that where a claim is partially subrogated, the subrogee must authorize the subrogor to judicially enforce the subrogated claim. See Carl Heck Engineers, Inc. v. Daigle, 219 So.2d 294 (La. App. 1st Cir.), writ denied, 253 La. 1082, 221 So.2d 517 (1969). Allstate did not attempt to judicially enforce its claim against defendants, nor does the record reveal that Allstate granted to plaintiff the right to act as its agent in pursuing the claim.
The objection of nonjoinder of an indispensable party is the proper vehicle to raise the failure to assert this subrogated claim. La.C.C.P. art. 697, comment c. Thus, the trial court erred in not sustaining defendants' objection. The award of $2,092.89 is reversed.
The trial court may have been able to adjudicate plaintiff's claim for the $100 deductible and additional property damage, if any. Plaintiff answered the appeal but did not seek this relief. La.C.C.P. art. 2133.

EXCLUSION OF TESTIMONY
In the seventh assignment of error defendants contend that the trial court erred in not excluding the testimony of a witness whose name had not been provided in interrogatories as a potential witness.
The trial judge has the discretionary power to allow or disallow the testimony of a witness at trial when a party has failed to satisfy a duty to supplement answers to interrogatories. See La.C.C.P. arts. 1428 and 1471; Morrison v. J.A. Jones Construction Co., Inc., 537 So.2d 360 (La.App. 4th Cir.1988). The trial court's allowance of the testimony is not erroneous absent an abuse of discretion. Morrison, 537 So.2d at 363.
Although the name of this witness, Jerry Cutrer, was not provided in interrogatories, Mr. Cutrer is a former employer and next door neighbor to plaintiff and plaintiff alleges that his name was provided in a discovery deposition as a former employer. He testified that plaintiff was a hard worker, both at work and at home; since the *499 accident he observed a change in her gait; she no longer does her own yard work and complains often of neck pain. Mr. Cutrer's testimony was corroborative. Thus, defendants were not prejudiced by Mr. Cutrer's testimony. Accordingly, we find no abuse of the trial court's discretion in this matter.

LOSS OF FUTURE EARNINGS AND EARNING CAPACITY
Plaintiff is employed by the State as a school bus driver and is a beautician in her own beauty shop. Plaintiff contends that her injuries prevent her from working daily as a beautician thus reducing her earning potential.
In written reasons for judgment the trial court stated that "based upon the testimony adduced at trial and the income tax records of plaintiff, the Court feels that these claims are speculative at best and the Court therefore cannot make an award for these claims." These findings by the trier of fact are adequately supported by the record and are not clearly erroneous. Accordingly, the judgment of the trial court is affirmed in part and reversed in part.
Costs are assessed against defendants.
AFFIRMED IN PART AND REVERSED IN PART.