289 So.2d 506 (1974)
Henry COWARD, Jr., Plaintiff-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY et al., Defendants-Appellees.
No. 4400.
Court of Appeal of Louisiana, Third Circuit.
January 25, 1974.
Rehearing Denied February 25, 1974.
*507 Tate & Tate, by Paul C. Tate, Mamou, for plaintiff-appellant.
Plauché, Smith & Hebert, by Andrew L. Plauché, II, Lakes Charles, for defendant-appellee.
John W. Hebert, Jennings, for defendant-appellee.
Marcantel & Cassidy, by Bernard N. Marcantel, Jennings, for defendant-appellee.
Before FRUGÉ, MILLER, and PONDER, JJ.
FRUGÉ, Judge.
Plaintiff, Henry Coward, Jr., instituted this suit as a result of a two-truck collision which occurred shortly after eleven o'clock on the morning of November 12, 1970. Plaintiff was the owner and driver of a 1966 Ford pickup truck which collided with a 1956 Ford rice truck owned by Ruffin J. Richard and driven at the time of the accident by Homer Sonnier. The accident transpired approximately three miles south of U. S. Highway 190, at the intersection of Louisiana Highway 26 with a parish gravel road located in Jefferson Davis Parish, Louisiana.
Plaintiff instituted suit to recover alleged damages from Homer Sonnier, his excess insurer, Southern Farm Bureau Casualty Insurance Company, and from Ruffin J. Richard and his insurer, United States Fidelity and Guaranty Company. The trial court, in denying recovery to plaintiff, held:
"(1) The accident occurred at an intersection within the meaning of La.R.S. 32:76;
(2) Defendant, Homer Sonnier, was negligent in attempting an improper left turn from Louisiana Highway 26 into the intersecting road; and
(3) Plaintiff, Henry Coward, Jr., was negligent in violating La. 32:76 by attempting to pass on the left while within 100 feet of an intersection and his negligence was a proximate cause of the accident."
Plaintiff has appealed the lower court's adverse determination. We affirm.
The crux of the plaintiff's appeal is concerned with the lower court's determination of contributory negligence on the part of the plaintiff. In brief, appellant has accepted the following statement of the case, as included in the lower court's written reasons for judgment, as "generally correct", except for the portions appellant has commented upon in double brackets. Other than an oversight, as indicated by our own single brackets, this statement of facts is fully supported by the evidence. Therefore, we have excerpted those paragraphs relevant to our consideration, and give express attention to those parts appellant contends to be demonstrably erroneous.
".... At the time of the accident the rice truck was being driven by Homer Sonnier accompanied by Zenon Richard, the father of Ruffin J. Richard. Henry Coward, Jr., the plaintiff was the sole occupant of his pick-up truck. The right front of plaintiff's pick-up truck collided with the left rear of the rice truck. [[This is incorrect as to plaintiff's truck, as discussed below.]] According to State Trooper Warner Miller, who investigated the accident, the plaintiff's truck left skid marks of approximately 28 feet in length beginning in his passing lane and according to the debris dropped from the rice truck at the point of impact show that the impact occurred in the west or southbound lane of Louisiana Highway 26 approximately 10 or 15 feet north of its intersection with the parish gravel road.
"Prior to the collision both vehicles were proceeding south in the west lane of Louisiana Highway 26. Plaintiff was traveling from his home in Mamou, Louisiana, to Jennings, Louisiana, to attend classes in the M.E.T. III Inc. program. *508 Although classes began at 8:00 o'clock A.M., at 11:00 o'clock that morning the plaintiff was still about 18 miles short of his destination.
"Defendant's truck, driven by Homer Sonnier, was returning from Elton, Louisiana, where he had delivered a load of soybeans. He was headed for the field where crops were being harvested. On approaching the relevant intersection Sonnier slowed his truck and apparently began to maneuver into the eastbound (sic) [northbound] lane in order to make a left turn into the intersecting parish gravel road. In the meantime plaintiff had also crossed over into the eastbound (sic) [northbound] lane of Highway 26 for the purpose of passing the truck driven by Sonnier. Apparently the plaintiff became aware of the truck's intention to turn left because the plaintiff slammed on his brakes and veered his truck southwesterly back toward the west lane of Highway 26 resulting in the accident. Following the collision, plaintiff's truck ended crosswise on Highway 26 with the front end facing east some 40 feet south of the point of collision. The impact caused the rice truck to make a sharp U-turn in the highway and overturn. Following the collision the rice truck was lying flat on its right side with its right wheels against the eastern edge of the pavement at the mouth of the parish road intersection. Its front end was facing north.
"At the time of the accident the weather was clear and the road surface dry. The parish gravel road intersecting Highway 26 at the situs of this accident is easily observable and identifiable as an intersection to a motorist approaching the intersection from the north. Plaintiff testified that he was familiar with the existence of this intersection, having seen it on several previous occasions. On the date of the accident the plaintiff first saw this intersection at the same time he saw defendant's rice truck preceding him and before plaintiff began his passing movement. He testified that he identified it and recognized it as an intersection when he was approximately three blocks north of it.
"There are no signs on Highway 26 marking the intersection and there are no yellow lines on the surface of the highway prohibiting passing at the intersection. However, there are black and white striped posts or bridge markings to alert a motorist to the existence of culverts on both sides of Highway 26 at the intersection. Louisiana Highway traffic "STOP" signs are installed on the shoulders of the parish road. Utility pole lines run along one edge of the parish road on both the east and west sides of Highway 26. The parish road is unmarked and unnumbered, but it is a public road with a 50-foot right-of-way. The roadbed is 27 feet wide along its entire route and easily accommodates two-way motor traffic. In addition to the roadbed the right-of-way includes parallel and open drain ditches on each side of the roadbed, shoulders and spoilbank. Mr. Murray Langley, who was the Police Juror in charge of this public road at the time of the accident testified that he maintained this road as a public road and that the road services some 20 to 25 farm families living two and one-half miles from Highway 26. Farm trucks continuously use this parish road during the harvest months of September, October and November.
"A parish map was introduced in evidence marking the location of the parish road and the intersection with Highway 26.
"Although the driver of defendant's truck, Homer Sonnier, testified that he did signal a left turn with his hand and also put on his left turn indicator the testimony of the State Trooper was to the effect that the turn indicator lights were not actually connected at the time of the accident and even if they had been connected there was so much dirt *509 covering the lights themselves that it would not have been seen by anyone approaching the truck from the rear. The evidence also indicates, and the Court so concludes, that the driver of the truck was easing over into the left-hand lane in order to make his turn into the intersecting parish road. [[This is incorrect, as discussed below.]] The Court, therefore, concludes that the driver of the truck was negligent.
"The Court does not conclude, however, that the accident was caused solely by the negligence of defendant, Homer Sonnier, in attempting to make an improper left turn from Louisiana Highway 26 into the intersecting parish road. The Court concludes that the plaintiff, Henry Coward, Jr., was guilty of contributory negligence, which will bar any recovery on his part."
It is the position of appellant's counsel that ".... the case involved a lead vehicle (defendant's) which cleared an open right lane as if turning left, inviting plaintiff to proceed, and then abruptly returned to that lane, causing plaintiff to collide with it. ..." In conjunction therewith, the appellant has deemed its conduct constitutive of no more than an "inchoate negligence", which never ripened into negligent conduct, by reason of what appellant classifies as a sudden and unexpected obstruction of the southbound lane of the highway by the defendant's truck.
By plaintiff's own admission, he attempted to pass the defendant's truck at a point in time when he was a distance of approximately 50 feet from the intersection. The testimony of Trooper W. D. Miller established that the point of impact was on the west side of the center line of the highway and north of the intersection approximately 10 to 15 feet. Trooper Miller's testimony revealed that skid marks had been produced by the plaintiff's pickup truck which proceeded from the northbound lane toward the southbound lane of the highway.
The skid marks were apparently made by the front wheels of the plaintiff's truck; those made by the front right wheel of plaintiff's truck originated in the northbound lane and continued to a point just on the west side of the center line, and those from the left front wheel commenced in the northbound lane and continued at an angle westerly until the point of impact. We do not find it of paramount importance that the trooper stated that the "entire front" of plaintiff's truck struck the rear of defendant's truck and that, in its written interpretation of this evidence, the lower court stated that the plaintiff's "right front" struck the left rear of defendant's truck. The initial impact between the two vehicles did occur west of the center line of the highway and did involve the right front of plaintiff's truck and the left rear of the defendant's truck. Following the impact, the plaintiff's truck continued onward 40 feet south of the point of impact and turned sideways with its front end pointing in an easterly direction. The rice truck, following the impact, swung to the east side of the highway, capsized, and stopped, lying flat on its right side facing northerly with its wheels against the concrete.
With the foregoing in mind, we note that the relevant article applicable to this fact situation is LSA-R.S. 32:76, which provides in pertinent part:
"A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:
* * * * * *
"(2) when approaching within one hundred feet or traversing any intersection or railroad grade crossing."
The question with which we are involved is whether the statutory duty of compliance with the prohibition against passing within 100 feet of an intersection was intended to afford protection against the risk of harm from collisions as herein *510 involved. In accordance with the following recent decisions of our Supreme Court:
"We have rejected the concept that a violation of a penal statute automatically constitutes negligence, and we have rejected the terminology `negligence per se'." Weber v. Phoenix Assurance Company of New York, 273 So.2d 30, 33 (1973).
Also, as stated in Smolinski v. Taulli, 276 So.2d 286, 289 (La.1973):
"While statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined." (Citations omitted.)
Having determined that the ill-fated passing attempt by plaintiff constituted a cause in fact of the accident, our attention is now focused on whether this particular violation was a legal cause establishing contributory negligence on the part of the plaintiff. We have found the case of McGehee v. Cox, 233 So.2d 36, 37 (La. App. 1st Cir. 1970), to be on point. The court in McGehee in discussing the scope of LSA-R.S. 32:76 stated:
"Mr. Cox's negligence is clear. He was attempting to pass another vehicle within 100 feet of an intersection, in direct violation of R.S. 32:76, which forbids driving a car in the left lane of a two-lane highway within 100 feet of an intersection. There was no yellow line painted on the highway, no sign warning traffic approaching from the south of the imminence of the intersection. However the junction is wide, and is readily observable to the motorists approaching from the south. Under the law as interpreted by our courts, this is an intersection such as is contemplated by R.S. 32:76..... This is precisely the type of accident which R.S. 32:76 was enacted to guard against. ..."
We, therefore, believe that it is clear that the duty imposed by this statute (R.S. 32:76) entails protection against the risk of harm created by a preceding motorist negligently turning left upon entering an intersection. It is manifest that plaintiff failed to fulfill the standard of care imposed by law and thereby contributed significantly to the legal cause of the accident.
Appellant has relied heavily upon the statement adduced at trial from defendant's witness, Mr. Zenon Richard, who answered in the affirmative when asked whether Mr. Sonnier ever drove east of the center line and then back into his lane just before the accident transpired. From a reading of the entire record, we do not find this single statement is of instrumental importance.
Our evaluation of the record has revealed several significant factors which we set out in the following: The plaintiff, Henry Coward, gave testimony at the trial of this matter, in relation to the facts leading up to the accident, which varied substantially with the facts as given at the time of his pre-trial deposition. The record, furthermore, affirmatively established that the veracity of the plaintiff was highly questionable. Additional evidence has demonstrated that there was a sufficient motive for the plaintiff to have been hurrying in an attempt to arrive at Jennings for school prior to twelve o'clock noon on the day of the accident.
It is so well settled as not to require citation that the factual conclusions of the trial judge are entitled to great weight and are not to be disturbed upon review in the absence of manifest error, especially where such conclusions are based upon the evaluation and credibility of opposing witnesses. We conclude that the trial court was not impressed with the account of the accident as testified to by plaintiff, and the testimony and physical evidence fully support such an opinion.
We note that the appellant did not dispute the trial court's finding that the location of the accident was an "intersection" *511 within the meaning of LSA-R.S. 32:76, and, therefore, we do not pass upon this issue to any greater extent than to say that this determination is solidly buttressed by the jurisprudence of this State. Guillory v. Travelers Insurance Company, 241 So.2d 772 (La.App. 3rd Cir. 1970).
From the evidence as presented at the trial of this matter, we believe that the trial court's written reasons reflect a well-considered deduction of the actions of each driver in the seconds before impact. The lower court ably reasoned that:
"On approaching the relevant intersection Sonnier [the defendant] slowed his truck and apparently began to maneuver into the eastbound lane in order to make a left turn into the intersecting gravel road. In the meantime plaintiff had also crossed over into the eastbound lane of Highway 26 for the purpose of passing the truck driven by Sonnier. Apparently the plaintiff became aware of the truck's intention to turn left because plaintiff slammed on his brakes and veered his truck southwesterly back toward the west lane of Highway 26 resulting in the accident." (Tr. 213.)
From the foregoing fully supported assessment of the acts pre-existent to the accident, it is manifest that the "sudden emergency" doctrine is inapplicable. This is so, because of the well-established jurisprudence that allows the doctrine's application only where a motorist is faced with a sudden emergency not of his own creation or making, and to which he did not contribute. Cobb v. American Indemnity Company, 256 So.2d 489 (La.App. 2nd Cir. 1972).
Having found the credibility of the witnesses ably evaluated by the lower court, and the evidence fully supportive of the plaintiff's contributory negligence, we are unable to find error on the part of the lower court and certainly no existence of manifest error.
For the above and foregoing reasons, the judgment of the lower court is affirmed. Appellant is to pay all costs of this appeal.
Affirmed.