604 So.2d 641 (1992)
James R. BOUDREAUX, Individually and as Tutor of his Minor Daughter, Bridgette Y. Boudreaux[1]
v.
Julius FARMER, Jr., State Farm Insurance Co., Southern Farm Bureau Casualty Insurance Co., L.J. Earnest, Inc. and State of Louisiana, Department of Transportation and Development.
No. CA 91 0333.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
Writ Denied October 29, 1992.
*645 Byard Edwards, Jr., Ponchatoula, Robert Vandaworker, Baton Rouge, Ron S. Maclauso, Hammond, for plaintiff-appellee.
Stephen J. Caire, Covington, for Dept. of Trans. and Dev.
John T. Campbell, Minden, for L.J. Earnest.
Craig Robichaux, Bogalusa, for La. Farm Bureau.
Robert B. Schambach, Metairie, for defendant-appellant Julius Farmer.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action is a suit for damages in tort arising out of an automobile accident. The accident happened in the intersection of two roadways when Julius Farmer, Jr. attempted a left turn in his 1973 Plymouth automobile and collided with a 1986 Ford automobile owned by James R. Boudreaux and being operated by Boudreaux's daughter, Bridgette, who was attempting to pass the Farmer vehicle. The intersection was under construction at this time. Made defendant's were: (1) Farmer; (2) State Farm Mutual Automobile Insurance Company (State Farm), Farmer's alleged liability insurer[2], (3) Louisiana Farm Bureau Casualty Insurance Company (LFBC)[3], Boudreaux's uninsured motorist insurer, (4) L.J. Earnest, Inc. (Earnest), the contractor for the repairs being made in the roadway, and (5) the State of Louisiana, Department of Transportation and Development (DOTD), the owner of the roadway. LFBC filed a cross claim against Farmer, Earnest, and DOTD to recover all sums it was required to pay Boudreaux. After a bench trial, the trial court rendered judgment in favor of Boudreaux and against Farmer, LFBC, Earnest and DOTD. The trial court also rendered judgment in favor of LFBC on its cross claim against Farmer, Earnest and DOTD for reimbursement for all sums LFBC was ordered to pay Boudreaux. From this judgment, DOTD appealed suspensively and Farmer appealed devolutively.[4]

UNDISPUTED FACTS
This accident occurred on August 8, 1986, at the intersection of Louisiana Highway 22 (La. 22) and Dunson Road in Tangipahoa Parish, Louisiana.
La. 22 runs in an east-west direction and Dunson road runs in a north-south direction. The intersection was controlled by a flashing traffic light that was flashing yellow for La. 22 and flashing red for Dunson Road. La. 22 was the favored roadway. At the time of the accident La. 22 was under construction pursuant to a contract between DOTD and Earnest. Because of the construction, there were no traffic control markers painted in the roadway.
Bridgette Boudreaux was traveling in an easterly direction on La. 22. She approached the 1973 Plymouth driven by Julius Farmer that was stopped in her lane of travel at the intersection of La. 22 and Dunson Road. Boudreaux attempted to pass on the left. As Boudreaux came up alongside the Farmer vehicle, Farmer turned left into the path of Boudreaux's car. The front of Farmer's car collided with the right rear panel of Boudreaux's car. Boudreaux's car spun out of control, traveled approximately thirty-six feet, hit a concrete culvert in a ditch alongside the *646 highway and came to rest at the bottom of the ditch. Boudreaux was knocked unconscious and brought by ambulance to the emergency room at the Seventh Ward General Hospital. After X-rays of the skull and cervical spine were taken, Boudreaux was sent home.

DISPUTED FACTS
Bridgette Boudreaux testified she was traveling at approximately 30 miles per hour as she approached the Farmer vehicle. She claimed Farmer was stopped for about 20 seconds with his right turn signal on. Boudreaux assumed Farmer would turn right, pulled into the left lane of the highway and attempted to pass. She was hit by Farmer when he turned left. Boudreaux testified she might have been able to maintain control of her car if it had not been for a pile of debris or gravel in the road. She claims the gravel was approximately 4½ feet wide and 1 to ½ feet high. Boudreaux was familiar with this intersection and knew there was a flashing yellow caution light at this location.
Farmer testified he signaled for a left turn onto Dunson Road but had to wait for two westbound cars to pass. Farmer claimed Boudreaux came along and clipped his front bumper before he could complete the turn. He did not see a pile of rubble in the road; he only saw a small amount of sand and rocks. Farmer maintained he looked in his rear view mirror before he began the turn and did not see the Boudreaux car.
Timmy Ragan testified he was sitting on a tractor on Ridgdell Road which is on the opposite side of La. 22 from Dunson Road. He saw Farmer's car stopped in the eastbound lane of the La. 22. Ragan did not notice whether or not Farmer was signaling a turn in either direction. The Farmer vehicle was stopped for 15 to 20 seconds before turning left. Boudreaux was traveling at approximately 30 to 40 miles per hour as she attempted to pass. Although he did not see the cars collide, Ragan did see Boudreaux lose control of her car. Boudreaux's car hit a pile of gravel where Dunson Road meets the highway. The gravel was 6 to 12 inches high, covered three quarters of the intersection and caused Boudreaux's car to slide out of control and into the ditch.
Levi Robertson testified he was in his car in the parking lot of Harrison's Store located at the corner of La. 22 and Ridgdell Road and was attempting to pull out onto La. 22 and head east. He saw Farmer stop at the intersection and make a right turn signal. Robertson pulled out onto the highway. Robertson then heard a crash, turned around and saw Boudreaux's car in the ditch.
Donald Vicknair testified there was about 14 to 16 inches of gravel or rubble on the road at the intersection of Dunson Road and La. 22 on the day of the accident. He claimed it had been there for several days, and he had been forced to maneuver around it when turning onto Dunson Road from the eastbound lane of La. 22. The pile of gravel was 10 to 15 feet long.
Wallace Wells, a member of the Tangipahoa Parish Council, testified he complained to DOTD's Hammond office on several occasions about piles of ground asphalt left on the road during road construction. He claimed these piles of gravel had remained there for several days. Wells also complained to DOTD about the culvert located only two feet from the westbound lane of La. 22 that had no object markers or guardrails.
Gene Moody was qualified as an expert witness in accident reconstruction, road construction and maintenance, and civil and structural engineering. Moody testified the collision between the two cars was minor and could not, by itself, have caused Boudreaux's car to spin out of control and travel such a distance. He estimated that the mound of rubble was very close to the edge of Dunson Road and La. 22 and was 10 to 20 feet long and 6 to 18 inches high. He testified the widening of the highway was a design defect because it left only a two foot shoulder between the roadway and the five foot vertical drop-off of the ditch. The ditch and culvert had no object *647 markers and no guardrails. Moody claimed a guardrail probably would have prevented Boudreaux's car from hitting the culvert and landing in the ditch.[5] He estimated that Boudreaux was driving 30 to 35 miles per hour at the time of the accident.
Joel McWilliams, project engineer with DOTD, testified he was in charge of making sure the contractor, Earnest, complied with the terms of its construction contract with DOTD. He testified Earnest fulfilled all the obligations imposed on it by the contract and did not violate any of its terms. DOTD's inspector on this project, Johnny Compton, corroborated this testimony. McWilliams asserted Earnest is solely responsible under the contract for maintaining traffic and ensuring the safety of motorists.
Boudreaux testified she began experiencing severe headaches about three months after the accident. She also complained of neck pain, back pain, arm soreness, blackouts, blurred vision and chest pains. Boudreaux testified she has lost approximately 30 pounds since the accident because the constant headaches have decreased her appetite. Although she graduated from high school on time, she missed 51 days of her junior year because of the pain. Boudreaux completed one semester of college but did not go back. She has been treated by two orthopedic surgeons, an ophthalmologist, a neurologist, two chiropractors and a psychiatrist, but has not gotten any relief. Boudreaux can no longer engage in athletic activity. She cannot read for any length of time because it makes her headaches worse. Although she worked for three months at a supermarket, she quit because of the pain. She can no longer go places with friends and has become severely depressed. She had always loved to paint and draw but can no longer do so because she cannot sit or stand in one place for very long. She wanted to pursue a career in either commercial art or interior design before the accident, but she will not be able to because of the accident.
Dr. Charles Kennon, an orthopedic surgeon, first examined Boudreaux on August 25, 1986. At that time, Boudreaux complained of headaches and pain of the cervical spine. Dr. Kennon diagnosed cervical strain and/or sprain. He sent her to a neurologist, Dr. Allen Proctor, to determine the cause of the headaches. Dr. Proctor diagnosed post-concussion syndrome. Dr. Kennon opined the neck strain and/or sprain may also be a contributing cause of the headaches. Dr. Kennon also diagnosed mild cervical spondylosis. Boudreaux's head and neck pain did not improve in the four years he treated her, and it will probably continue for the foreseeable future. He did not place any physical restrictions on Boudreaux, but advised her to use her own judgment as to what she can, and cannot, do.
Boudreaux was examined by Dr. Stuart Phillips, an orthopedic surgeon, on May 14, 1990. He diagnosed a prolapsed disc in the cervical spine and agreed with Dr. Kennon concerning the cause of the headaches. He did not recommend surgery. Dr. Phillips also diagnosed Scheuermann's disease. This is a developmental abnormality of the dorsal spine that occurs in adolescence during the time of rapid growth. This condition causes a person to develop a hunchback. It is caused by either repetitive trauma or growth abnormalities. There is no treatment for this condition, and it causes pain between the shoulder blades with changes in weather and overactivity. In reference to the cause of Boudreaux's Scheuermann's Disease, Dr. Phillips stated as follows:
And I suspect that it happened around the time of the accident; she was 16 when she got hurt. But, of course, I saw her four years later. All I can see is *648 what's there now. I would have to defer to the people that treated her at the time as to whether she had symptoms at that time.
Dr. Phillips recommended that Boudreaux refrain from manual labor and limit sports activities, lifting and working with her arms overhead.
Dr. Richard Strobach, a psychiatrist, began treating Boudreaux on May 30, 1990. He diagnosed major depression and mild chronic traumatic stress disorder. Dr. Strobach testified Boudreaux's constant pain causes her to have suicidal thoughts. He described Boudreaux as a chronic pain patient who will require treatment in a pain unit to learn to live with the pain. Dr. Strobach testified a stay at a pain clinic lasts approximately 30 days at an estimated cost of between $50,000 and $75,000.
Dr. Melville Wolfson, an economist, was called by Boudreaux to testify. He calculated Boudreaux's lost earning capacity by first assuming she would have graduated from college by June 1992 if she had not been in the accident. Dr. Wolfson learned from Southeastern Louisiana University that the average income for graduates in commercial art is $26,000 a year. He then assumed Boudreaux would have a work life expectancy until the age of sixty. Dr. Wolfson calculated Boudreaux's future earnings as having a present value of $786,112. Dr. Wolfson also calculated Boudreaux's "loss of personal service" to be $131,896. Loss of personal service represents the inability to engage in typical household activities. He used the assumption that Boudreaux would have been able to perform 20 hours per week of that kind of work valued at minimum wage until the age of 70. He then figured the present value of that amount.
The trial court, in its written reasons for judgment, itemized Boudreaux's damages as follows in rendering a $1,583,649.28 judgment in her favor:

Loss of Future Income: $ 786,112.00[6]
Loss of Personal Service: $ 131,896.00
Past Medical Expenses: $ 8,641.28
Future Medical Expenses: $ 75,000.00
Past and Future Pain
and Suffering: $ 350,000.00
Loss of Enjoyment of
Life: $ 250,000.00
 _____________
 TOTAL $1,583,649.28

COMPARATIVE FAULT OF BOUDREAUX

(DOTD's assignment of error # 2)

(Farmer's assignment of error # 2)
DOTD and Farmer assert the trial court erred in failing to (1) find Boudreaux at fault and (2) apportion fault among the parties.
The trial court in its written reasons for judgment stated, in pertinent part, as follows:
Passing in this unmarked and largely uncontrolled intersection under the circumstances of this case where plaintiff was relying on the signal given by Farmer was not negligence. This is a situation where even the most prudent driver would have done the same thing that plaintiff did, that is, start to pass where the other driver was indicating a turn to the right. The prohibition against passing is universally disregarded under such set of facts. It does not constitute contributory negligence.
The trial judge cited no legal authorities for this holding. La.R.S. art. 32:76 provides, in pertinent part, as follows:
A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:
. . . . .

*649 (2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;
Further, the driver of an overtaking or passing vehicle has the duty to ascertain before attempting to pass a preceding vehicle that from all circumstances of traffic and conditions of the roadway, the passing can be completed with safety. Palmieri v. Frierson, 288 So.2d 620 (La.1974). Chaney v. Cunningham, 411 So.2d 519 (La. App. 1st Cir.1982).
Boudreaux violated La.R.S. 32:76 when she attempted to pass at an intersection. The breach of this statutory duty was a cause-in-fact of the accident. Had Boudreaux not been in the left lane of traffic this accident would not have occurred. This type of accident falls within the ambit of protection of the duty created by La.R.S. 32:76. See, Hinton v. Dairyland Insurance Company, 426 So.2d 193 (La.App. 1st Cir.1982); Coward v. United States Fidelity & Guaranty Company, 289 So.2d 506 (La.App. 3rd Cir.1974); Rills v. Southern Bell Telephone Company, 289 So.2d 232 (La.App. 1st Cir.1973).
Further, La.R.S. 32:234 provides, in pertinent part, as follows:
A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
. . . . .
(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL)When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.
Although there were no signs or double yellow lines indicating a "no passing zone", Boudreaux was familiar with this intersection, knew about the road construction and was aware of the flashing yellow caution light. Boudreaux was negligent in attempting to pass at this intersection. The trial court was clearly wrong in finding Boudreaux was not at fault in causing this accident.[7]
The trial court erred as a matter of law in not assigning percentages of fault. La. C.C.P. arts. 1917 and 1812(C); Porche v. Point Coupee General Hospital, 554 So.2d 1345 (La.App. 1st Cir.1989); Martino v. Sumrall, 554 So.2d 1343 (La.App. 1st Cir. 1989); Scott v. State, 525 So.2d 689 (La. App. 1st Cir.1988), writ denied, 558 So.2d 1128 (La.1990).
These assignments of error have merit.

FAULT OF FARMER

(Farmer's assignments of error #'s 1 and 3)
Farmer contends the trial court erred by finding him at fault in causing Boudreaux's injuries.
La.R.S. 32:104 provides, in pertinent part, as follows:
A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
(Emphasis added)
A leading motorist has a duty to have the proper turn signal illuminated upon the execution of a turn. The scope of this duty encompasses the risk that a following driver may not be keeping a proper lookout. In addition to giving the proper signal, the *650 leading motorist is required to make a proper observation that the turn can be made without endangering a passing vehicle. Walton v. Bellard, 581 So.2d 307 (La.App. 1st Cir.), writ denied, 585 So.2d 567 (La.1991).
Our review of the record leads us to the conclusion that the trial court was not clearly wrong in finding as a fact that Farmer made a right turn signal and then turned left.
In Courmier v. Travelers Insurance Company, 486 So.2d 243 (La.App. 3rd Cir.), writs denied, 489 So.2d 250, 251 (La.1986), the Louisiana Third Circuit Court of Appeal faced a similar set of facts as those here. The plaintiff signaled a right turn at an intersection but turned left into the path of the defendant who was improperly attempting to pass plaintiff in the left lane. In holding plaintiff to be 40% at fault in causing the accident, the court stated as follows:
Judicial interpretations of LSA-R.S. 32:104 A have made it extremely clear that a left turning motorist has a strong duty of care, which duty includes properly signaling an intention to turn left, and keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety. The left turning motorist is required not only to look to the left before turning, but has a duty to see what should be observable.
(Citations omitted; footnote omitted) 486 So.2d at 247.
Farmer breached duties to properly signal a left turn and keep a proper lookout. The breach of these duties was a legal cause of the accident and Boudreaux's injuries.
These assignments of error are without merit.

FAULT OF DOTD
(DOTD's assignments of error 1, 3 and 5)
DOTD alleges the trial court erred in finding it at fault in causing Boudreaux's injuries.
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315. Usually the difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La.C.C. art. 2317, a claimant is relieved of proving the defendant's knowledge of the risk. Clement v. State, Department of Transportation and Development, 528 So.2d 176 (La.App. 1st Cir.), writ denied, 532 So.2d 157 (La.1988). However, La.R.S. 9:2800 provides that even under a strict liability theory, when the defendant is a public entity, the plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect and failed to remedy it within a reasonable time. Under either theory of liability (when the defendant is a state entity), the plaintiff has the burden of proving that: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); (3) the defendant had actual or constructive knowledge of the risk; and (4) that the defect in the property was a cause in fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty.
DOTD has a duty to maintain public highways in a reasonably safe condition and remedy conditions that make the roadway unsafe. The duty to remedy arises from knowledge of an unsafe condition on the highway. Before DOTD may be held liable for an accident caused by a *651 hazardous or dangerous condition, it must be shown that it had actual or constructive notice of the condition and a sufficient opportunity to remedy the situation or at least warn motorists of its presence, and failed to do so. Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 429 So.2d 127, 134 (La.1983). Whether a breach of this duty has occurred depends on the particular facts and circumstances of each case. Manasco v. Poplus, 530 So.2d 548 (La.1988).
DOTD contends that its duty to maintain the highway in a safe condition was shifted to Earnest by the construction contract.[8] Section 107.07 of the Louisiana Standard Specifications for Roads and Bridges (1982 edition) which was specifically adopted as part of the contract provides, in pertinent part, as follows:
The contractor shall so conduct his work as to assure the least possible obstruction to traffic.
When the highway under construction is to be kept open for traffic, the subgrade and surfacing shall be kept reasonably free from dust and in such condition that the public can travel the road in safety. Safety and convenience of the general public and the residents along the highway, and protection of persons and property, shall be a primary responsibility of the contractor.
Despite the fact that Earnest contractually agreed to perform this duty, the jurisprudence has held DOTD may not delegate its responsibility to maintain state highways for purposes of its liability to third persons. See, Roberts v. State, Department of Transportation and Development, 576 So.2d 85 (La.App. 2nd Cir.), writ denied, 581 So.2d 685 (La.1991); Jones v. Johnson, 572 So.2d 150 (La.App. 1st Cir.1990), writ denied, 576 So.2d 519 (La.1991); Robinson v. State Department of Transportation and Development, 454 So.2d 257 (La.App. 1st Cir.), writ denied, 458 So.2d 122 (La. 1984).[9]
Timmy Ragan, Donald Vicknair, and Wallace Wells testified there was excessive rubble or gravel on the road at the intersection of the highway and Dunson Road. Vicknair and Wells claimed the debris had been there for several days. Wells testified he called DOTD several times to complain about this situation. Gene Moody, Boudreaux's expert, testified Boudreaux's car would not have slid into the ditch had it not been for this gravel in the road.
The trial court found as fact that this gravel or rubble created an unreasonable risk of harm to motorists traveling Highway 22. This was a breach of DOTD's duty to maintain the highway in a reasonably safe condition. DOTD had knowledge of this hazardous condition prior to the accident. It also had enough time to have Earnest remove the debris or do it with DOTD personnel. The breach of the duty to keep the highway in a reasonably safe condition was a cause-in-fact of the accident. The breach of the duty to maintain the highway in a reasonably safe condition was a legal cause of the accident and resulting injuries. The risk of harm encountered by Boudreaux of sliding and losing control of her car was within the scope of the protection afforded by DOTD's duty. For other cases holding DOTD at fault in failing to remove loose gravel from the road, see, Llorence v. State, Department *652 of Transportation and Development, 558 So.2d 320 (La.App. 3rd Cir.), writs denied, 565 So.2d 442, 443 (La.1990); Schexnayder v. State, 477 So.2d 1175 (La.App. 1st Cir. 1985). The trial court's factual finding on this issue is not clearly wrong.[10]
These assignments of error are without merit.

APPORTIONMENT OF FAULT
Because the trial court erred factually by not finding Boudreaux at fault and erred legally by not apportioning fault, we will proceed to a de novo apportionment of fault.
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, ... (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985); Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991).
Boudreaux was guilty of active negligence in attempting to pass at an intersection. She was aware of the road construction and the flashing yellow caution light. Farmer was actively negligent in making a left turn after signaling a right turn. The combined negligence of Boudreaux and Farmer set in motion the chain of events that caused Boudreaux's injuries. Earnest was responsible for maintaining the roadway in a safe condition for traveling public during the period of construction. Earnest breached this duty by allowing this large amount of loose gravel to remain at the intersection. Although DOTD was not directly responsible for creating this hazardous condition, it remained ultimately responsible for maintaining the safety of the highway. Moreover, DOTD had been warned of this dangerous condition and failed to make sure that Earnest rectified the situation. Although the negligence of Earnest and DOTD was passive and unlike that of Boudreaux and Farmer, they should be held partially accountable for this accident. After a review of the record, we apportion 25% of the fault to Boudreaux, 55% of the fault to Farmer and LFBC, 10% of the fault to Earnest and 10% of the fault to DOTD.

QUANTUM

(DOTD's assignment of error # 6)
DOTD asserts the damages awarded are excessive and not supported by the record.
The standard usually used for appellate review of a trial court's award of damages is set forth in Reck v. Stevens, 373 So.2d 498, 501 (La.1979), as follows:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this *653 individual may a reviewing court determine that the award is excessive.
....
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, ... or insufficient,.... Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries,....
However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award.
(Citations omitted; footnote omitted)
If an abuse of discretion is found, the appellate court will only lower the award to the highest (or raise the award to the lowest) point which is reasonably within the discretion afforded the court; the appellate court does not substitute its judgment for that of the trial court judge or jury in this situation. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). However, if the validity of a jury verdict or trial court judgment on quantum is interdicted by a factual or legal error, the abuse of discretion standard will not be followed, and the appellate court will not remand but will undertake an independent evaluation of the record and exercise its own discretion to fix a (de novo) quantum award, if the record is otherwise complete. Suhor v. Gusse, 388 So.2d 755 (La.1980).

Medical Expenses
None of Boudreaux's medical bills were filed into evidence, nor was there any testimony regarding past medical expenses. The record does contain copies of checks totaling $2,855.06 paid by LFBC to Boudreaux. There is no proof of past medical expenses other than those for which Boudreaux has already been compensated by LFBC. The trial court erred by awarding damages for past medical expenses.[11]
None of the physicians who treated Boudreaux recommended surgery. The only evidence concerning the cost of future medical care came from Dr. Strobach who testified Boudreaux would probably need treatment at a pain unit. Dr. Strobach estimated the cost of such treatment to be between $50,000 and $75,000. The defendants offered no evidence to refute this testimony. The trial court awarded $75,000. This award is not an abuse of discretion.

Loss of Earning Capacity
A loss of future income award and/or earning capacity is not predicated merely upon the difference between a plaintiff's earnings before and after a disabling injury, but also encompasses the loss of one's earning potential or capacity, that is, the loss or reduction of a person's capability to do that for which he is equipped by nature, training, and experience, *654 and for which he may receive recompense. Earning capacity itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured person could have earned despite the fact he may never have seen fit to take advantage of that capacity, if the injury has deprived him of a capacity he would have been entitled to enjoy, even though he never profited from it. Henry v. National Union Fire Insurance Company, 542 So.2d 102 (La.App. 1st Cir.), writ denied, 544 So.2d 405 (La.1989).
Earnest, DOTD and Farmer offered no evidence to counter the testimony of Dr. Wolfson. Dr. Wolfson calculated Boudreaux's lost earning capacity to be $786,112. This figure was based upon the unchallenged testimony that Boudreaux was a talented artist with a promising future before the accident. The trial judge accepted this testimony and awarded that amount. The trial court did not abuse its discretion.

Loss of Personal Service
Dr. Wolfson, in computing loss of personal service, was asked to assume that Boudreaux would never be able to engage in any "personal service type activities". He described these activities as "cooking, ironing, mopping, grocery shopping, transportation, and the other typical household activities in which women have been engaged". Using minimum wage as a measure, he calculated Boudreaux's loss of personal service to be $131,986. Although Dr. Wolfson did not so state, the inference is that Boudreaux would have to hire someone to do these things for her.
The record does not contain any evidence that Boudreaux is permanently incapable of performing personal service activities or that she presently needs or will need to hire someone to perform these activities for her. Although none of the doctors who treated her testified that she could never work, they did limit her activities to those which did not increase her pain. Boudreaux testified that even sedentary activities such as reading increased her pain. She also testified she was forced to quit college and her job at the supermarket because her pain was so great. Dr. Strobach described her as being a chronic pain patient. Apparently, the trial judge inferred from this evidence that Boudreaux was unable to perform personal service activities. After a thorough review of all of the evidence, we conclude that the trial court was not clearly wrong by making this inference. The amount awarded is not an abuse of discretion.

General Damages
General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of life-style which cannot be measured definitively in terms of money. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978). There is no mechanical rule for determining general damages and the facts and circumstances of each case must control. Day v. South Line Equipment Company, 551 So.2d 774 (La.App. 1st Cir.), writ denied, 553 So.2d 474 (La.1989). The facts of this particular case are that Boudreaux suffered injuries to her head and cervical spine that have caused her to suffer constant headaches and neck pain. Dr. Kennon testified Boudreaux's condition did not improve in the four years he treated her. Dr. Strobach testified Boudreaux's pain was so intense that she contemplated suicide and would probably need to be treated at a pain unit to learn to live with her chronic pain.[12] The trial court awarded $600,000 for general damages ($350,000 for pain and suffering and $250,000 for loss of enjoyment of life). After reviewing the *655 record, we conclude the trial court did not abuse its discretion in fixing this award.

Conclusion
Bourdreaux suffered damages valued at $1,593,098 ($75,000 in future medical expenses, $786,112 in lost earning capacity, $131,986 in loss of personal service, and $600,000 in general damages). This amount must be reduced by 25% (Boudreaux's percentage of fault) to $1,194,823.50. Boudreaux had already accepted a $3,000 unconditional tender from LFBC. A reduction of that amount brings the total to $1,191,823.50. Boudreaux is entitled to a judgment in that amount.

CROSS CLAIM OF LFBC

(DOTD's assignment of error # 7)
DOTD alleges the trial court erred by rendering judgment in favor of LFBC and against DOTD on LFBC's cross claim. This assignment of error arises out of DOTD's allegation that it was not at fault in causing this accident. DOTD does not claim that LFBC has no right of reimbursement for money paid to Boudreaux under the coverage of the insurance policy. The trial court did not err in holding DOTD and the other defendants at fault in causing the accident.
This assignment of error is without merit.[13]

SOLIDARY LIABILITY

(DOTD's assignment of error # 4)
DOTD alleges the trial court erred in holding it solidarily liable with Farmer, Earnest and LFBC for Boudreaux's damages. At the time of the accident, La.C.C. art. 2324 provided, in pertinent part, as follows:
Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
(Emphasis added)
Because Boudreaux has been apportioned a greater degree of fault than DOTD and Earnest, they cannot be held liable to her for more than the their respective degrees of fault. See, D. Robertson, Vol. 1 Louisiana Practice Series, The Louisiana Law of Comparative Fault: A Decade of Progress, pp. 35-47 (1991).
This assignment of error has merit.[14]

DECREE
For the foregoing reasons, the judgment of the trial court is reversed in so far as it failed to find Boudreaux at fault and failed to apportion percentages of fault to Boudreaux, Farmer, Earnest and DOTD. Judgment is rendered holding Boudreaux 25% at fault, Farmer and LFBC 55% at fault, Earnest 10% at fault and DOTD 10% at fault. The judgment in favor of Boudreaux is amended to reduce her award to $1,191,823.50.[15] The judgment in favor of Boudreaux is further amended to limit the liability of Earnest and DOTD to their respective degrees of fault.[16] The judgment *656 in favor of LFBC on its cross claim is amended to limit the liability of Earnest and DOTD to their respective degrees of fault. In all other respects the judgment of the trial court is affirmed. Farmer and DOTD are cast for all costs of this appeal of $3,377.
REVERSED AND RENDERED IN PART; AMENDED AND AFFIRMED IN PART; AFFIRMED IN PART.
NOTES
[1] Bridgette Boudreaux, a minor at the time the suit was filed, subsequently reached the age of majority and was substituted as the proper party plaintiff in this action.
[2] State Farm was dismissed from this suit when it was learned that Farmer's policy had been canceled because Farmer failed to pay premiums.
[3] LFBC was improperly designated as "Southern Farm Bureau Casualty Insurance Company" in Boudreaux's petition.
[4] Earnest and LFBC filed appeals that were subsequently dismissed.
[5] The trial court, in its written reasons for judgment, held that these alleged design defects were not properly plead by Boudreaux and sustained DOTD's objection to their consideration in determining DOTD's liability. Boudreaux has not answered the appeal; therefore, we will not address this issue on appeal.
[6] This award is based on the trial court's factual finding that Boudreaux is "permanently prevented from any meaningful employment".
[7] The factual error concerning Boudreaux's fault did not interdict the trial court's findings of fact as to whether Farmer and DOTD were at fault; therefore, we will review these factual findings using the manifest error standard of appellate review. See, Picou v. Ferrara, 483 So.2d 915 (La.1986).
[8] Because Earnest's appeal was dismissed, the judgment against it is now definitive, and, therefore, it is unnecessary for us to discuss the legal basis for Earnest's liability.
[9] It is a general principle of Louisiana law that an employer is not liable for the torts of an independent contractor employee committed in the course of performing his contractual duties. Two exceptions to this rule are (1) when the injury results from an ultrahazardous activity and (2) when the principal reserves the right to supervise or control the work of the contractor. Stovall v. Shell Oil Company, 577 So.2d 732 (La.App. 1st Cir.), writ denied, 582 So.2d 1309 (La.1991). This is another exception to the general rule. Further, third persons using the roadway of La. 22 are not parties to the DOTD-Earnest contract. Since these third persons are not parties to the contract, they are not affected by it. The DOTD-Earnest contract could only affect the legal relations between DOTD and third persons if it were provided for in a special statute such as La.R.S. 9:3221.
[10] DOTD is liable under La.C.C. art. 2315 and not La.C.C. art. 2317. A temporary condition existing in the travelled portion of a roadway does not constitute a defect in the roadway as contemplated by La.C.C. art. 2317. A "defect" is some flaw or fault existing or inherent in the thing itself. The temporary existence of other objects which may constitute a hazard on the roadway does not constitute a defect in the roadway. Kyle v. City of Bogalusa, 506 So.2d 719 (La.App. 1st Cir.1987). Thus while the gravel is a hazard on the highway, it is not a defect in the highway itself for which DOTD would be liable under La.C.C. art. 2317. Naylor v. Louisiana Department of Public Highways. Cf. Collins v. Christophe, 479 So.2d 537 (La.App. 1st Cir. 1985), writ denied, 483 So.2d 1021 (La.1986).
[11] Under its policy, LFBC has a right of subrogation to recover payments made by it under the coverage of the policy. LFBC is the proper party plaintiff in an action to assert its subrogation rights; therefore, Boudreaux cannot recover damages for medical expenses for which she has already been compensated by LFBC. See, La.C.C.P. art. 697; Murray v. Sapp, 573 So.2d 495 (La.App. 1st Cir.1990).
[12] Dr. Phillips diagnosed Scheuermann's disease. He did not examine Boudreaux until four years after the accident and could not be sure this condition was caused by the accident. None of the other doctors made this diagnosis. In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429 (La.1991). A review of the record reveals that Boudreaux did not meet her burden of proving the accident caused her to develop this disease.
[13] The record shows LFBC paid Boudreaux $9,031.53 for the damage to her car, $2,855.06 for her past medical expenses and an unconditional tender of $3,000 under the uninsured motorist coverage for a total of $14,886.59. The trial court mistakenly awarded $14,887.13; however, this mistake was not assigned as error and we will not modify the judgment to reflect the correct amount.
[14] In assignment of error VIII DOTD asserted "[T]he trial courts awarding of $250,000 for Loss of Enjoyment of Life, $350,000 for Pain and Suffering/Past and Future and $131,896.00 for Loss of Personal Service is contrary to Limitation of Liability contained in LSA-R.S. 13:5106." Because of our other rulings, this issue is moot.
[15] This amount represents Boudreaux's damages ($1,593,098) reduced by her comparative fault and the $3,000 tender from LFBC.
[16] Farmer and LFBC (up to its policy limits) remain solidarily liable.