| .PATRICIA RIVET MURRAY, Judge.
Plaintiffs, Certain Underwriters at Lloyd’s, London [“Lloyd’s”] appeal the trial court’s judgment dismissing their suit against defendants, Amy Wallace, Theresa Heckman, and Allstate Insurance Company. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
On January 19,1999, a fire started in an apartment leased to Amy Wallace and Theresa Heckman by John Lewis, who, with his wife, owned the four-unit apartment building. The apartment building was insured by Lloyd’s, which paid the owners for their property damage. Lloyd’s, as subrogee of the Lewises, filed suit against Ms. Wallace, Ms. Heckman, and Allstate (Ms. Wallace’s insurer) alleging that the negligence of the lessees had caused the fire.
*1175 The matter was tried on September 10, 2003. At the conclusion of the trial, the court rendered judgment in favor of the defendants and gave oral reasons on the record. A written judgment was signed September 25, 2003. Lloyd’s now appeals that judgment, contending that the trial court committed manifest error by | ¿failing to accept the opinion of the sole expert witness who testified and by failing to apply the evidentiary doctrine of res ipsa loquitur.
DISCUSSION
Lloyd’s presented four witnesses at trial: John Lewis, the building owner; William Molten, Jr., an independent adjuster who had appraised the damage to the building; Captain Roger Peltier, the commanding officer of New Orleans Fire Department Engine No. 25, which had responded to the fire, and George Hero, an expert in the cause and origin of fires. Only Mr. Lewis’ testimony and that of Mr. Hero are pertinent to the issues on appeal.
Mr. Lewis testified that he and his wife purchased the apartment building in 1987. He stated that it was an old building, as are most uptown buildings, but he did not know exactly how old. He assumed that the building had the original wiring. He recalled having had electrical work done on the building twice, once in 1995 or 1996, when a tree had fallen on the building, and again in July of 1998, at which time the electrician had replaced the receptacle for one of the fuses in the fuse box because it had a burn spot in it. Approximately one month later, Theresa Heckman and Amy Wallace moved in, and the fire occurred about five months after that.
Mr. Lewis testified that he furnished certain appliances with the apartment, including window air conditioning units, a refrigerator, a stove, and a dishwasher. In addition, he believed Theresa Heckman and Amy Wallace kept in their apartment the “normal appliances,” such as a television, coffee maker, and stereo. |aHe did not give the tenants any extension cords to use. Mr. Lewis recalled that before the fire occurred, he had gone to the apartment at least twice because the tenants had called him to replace a fuse that had blown out. The first time, shortly after Ms. Heckman and Ms. Wallace moved in, he noticed the apartment was messy, with opened boxes on the floor, as if the tenants had not finished unpacking. The second time, which was about three weeks prior to the fire, he noticed that the apartment was still messy, with a bicycle in the kitchen, clothes on the floor, and boxes half unpacked. He did not notice any ashtrays or smoke odor. Each time Mr. Lewis was called, he merely changed the blown out fuse and left.
Mr. Hero, the plaintiffs fire expert, testified that he inspected the premises on January 29, 1999 (ten days after the fire). Based on his inspection, Mr. Hero opined that the fire had started in the rear room of the apartment, which the tenants used as a den / living room He further opined that the origin of the fire was within the tenants’ contents, reasoning that he had found no evidence that the fire had originated in the walls or ceiling of the apartment. However, his inspection of the mechanical devices in that room, which included a window air conditioning unit, T.V., V.C.R., cable box, and several space heaters (one electric and two gas), did not reveal any defects in those devices. Therefore, Mr. Hero opined that there were two possible causes of the fire: misuse of a space heater or a cigarette.
On cross-examination, Mr. Hero admitted that if there were credible evidence that the space heaters were either not plugged in or not turned on, and further that no one had smoked in the apartment *1176 within six to eight- hours of the 1 ¿fire, such evidence would rule out his two possible causes; in that case, ;he would have to say that the cause of the fire was unknown. Mr. Hero admitted that he does not find a cause or origin of every fire he investigates; some are undeterminable.
At the conclusion of the plaintiffs case, counsel for defendant Theresa Heckman submitted Ms. Heckman’s deposition in lieu of her live testimony, which deposition was admitted into evidence without objection.[1] In her deposition, Ms. Heckman testified that the day before the fire, she went to work about 5:00 p.m., went out with friends after work, and then arrived home at 2:30 a. m.; she then went straight to her bedroom to sleep without checking whether her roommate, Amy Wallace, was home. She might have looked into the den, but she did not go in there, and she did not see anyone in there. However, she had noticed Amy’s car in the driveway, so she assumed Amy was sleeping in her room. Although Amy’s fiance routinely slept over, she did not know if he was there that night. The smoke alarm awoke Ms. Heckman at sometime between noon and 1:00 p.m. She then saw the fire in the den, which was concentrated in the left corner of the room near the window unit and was going up the walls.
According to Ms. Heckman, she and Amy Wallace lived in the apartment less than a year. During that time, fuses blew out more than once. In fact, Ms. Heck-man said that when she and Amy had moved in, the prior tenant had given them a plastic bag full of fuses. Ms. Heckman testified that she and Amy used | Bextension cords in the apartment because certain wall sockets did not work. For instance, the lamp in Amy’s bedroom and the lights in the bathroom had to be plugged in using extension cords routed to other rooms. They also used extension cords and a power strip in the den. Ms. Heckman said the air conditioner in Amy’s bedroom did not work properly, 'the problem being that whenever it was turned on, it blew out a fuse.
Ms. Heckman testified there were gas space heaters in the apartment, but she never lit them because she was afraid of them. She thought the gas heaters were already in the apartment when she and Amy moved in, but she was not sure. She and Amy sometimes used the portable electric heater, which she thought may have belonged to Amy. This electric heater was in the room where the fire started, along with a T.Y., V.C.R., stereo, lamp, lava lamp, window air conditioning unit, clock, couch, chair, coffee table, end table, and plastic shelving that they used as an entertainment center. According to Ms. Heckman, the den did not have a rug, and there were no boxes on the floor. Ms. Heckman recalled that the day of the fire, the electric heater was sitting on the coffee table, and it was not plugged in, because it had not been used for several days. She said, alternatively, it could have been plugged in and turned off, but she did not think so. She also testified that the electric heater was located on the other side of the room from where she saw the fire, about seven feet from the flames. She stated that it was not cold outside when *1177 she ran out the building to get away from the fire.
| fiMs. Heckman said that she, Amy, and Amy’s fiance all smoked, but that Amy had quit because she was pregnant. They did keep ashtrays in the den.
Defendant Amy Wallace was the final witness to testify. She said both she and her fiancé had slept in her bedroom the night before the fire.[2] She awoke about 8:30 to get ready for class. She did not go into the den that morning. She did not turn on any of the heaters, which they only used when it was really cold. Ms. Wallace said she smoked, but she had quit smoking on New Year’s Eve after finding out she was pregnant. Ms. Wallace testified she smoked less than five cigarettes between the time she quit and the day of the fire, and she did not have one that morning. She left the apartment about 9:15 a.m. to go to her 10:00 a.m. college class. She did not find out about the fire until she arrived home about 3:00 or 4:00 p.m. that afternoon.
Ms. Wallace confirmed Ms. Heckman’s testimony that some of the wall outlets, specifically one in her bedroom and one in the bathroom, did not work and therefore, were connected by extension cords running to the kitchen. She also testified that fuses blew out very often while they lived in the apartment, and that there were increasingly smaller amounts of time between the fuses blowing out. She corroborated Ms. Heckman’s testimony that the previous tenant had given her and Amy a plastic bag of fuses when they moved in.
At the conclusion of the evidence, the trial court ruled from the bench, finding in favor of the defendants and dismissing the plaintiffs petition. On the |7record, the trial judge gave the reasons for her judgment, stating that the plaintiff had not met its burden of proving that the defendants did anything negligent that caused the fire. Specifically, the trial judge noted that although Mr. Hero had opined that the fire was caused by either a cigarette or a space heater, she found the defendants’ testimony to be credible. According to that testimony, neither Ms. Heckman nor Ms. Wallace had smoked a cigarette during the relevant time period, and furthermore, the electric heater, which was the only one the tenants may have owned and the only one they used, was not plugged in. Moreover, the trial judge stated that there was evidence of continual electrical problems in the building, which she noted was built in 1959 and may not have been able to accommodate modern electrical appliances. Finally, the trial judge reasoned that there were unexplored variables that could have had some bearing upon the origin of the fire, such as the possible third party responsibility of Ms. Wallace’s then flaneé, Mr. Misok, who was not called to testify.
The first assignment of error by the plaintiff is the trial court’s failure to accept the expert testimony of Mr. Hero. Upon review, we can find no manifest error in that regard. Mr. Hero admitted that if there were credible testimony that no one had smoked in the apartment within six to eight hours of the fire and that the space heaters were not in use at the time, such evidence would negate his theories of causation. The trial court found credible evidence on each point. It is axiomatic that the evaluation of credibility is the unique province of the trial court. |8We therefore cannot say it was manifest error for the trial court to reject Mr. Hero’s opinion as to causation.
*1178 The plaintiffs second argument on appeal is that the trial court should have applied the doctrine of res ipsa loquitur. This doctrine, which means “the thing speaks, for itself,” permits, but does not require, the trial court to infer negligence from the circumstances of the event. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 665 (La.1989). In order to utilize the doctrine, the plaintiff must establish that the injury is of the type that does not ordinarily occur in the absence of negligence, and must establish facts that permit the trial court to reasonably conclude it was more likely than not that the defendant’s negligence caused the injury. To accomplish this, the plaintiff must sufficiently exclude the inference .of his own responsibility or the responsibility of others besides the defendant in causing the accident. Id. at 665-666.
In the instant case, we find the plaintiff did not establish the ■ necessary foundation for the application of res ipsa loquitur. Specifically, the existence of a variable not explored by the evidence, specifically, the potential responsibility of Mr. Misok, who was in the apartment the night before the fire and who was a smoker, in itself precludes the application of res ipsa loquitur to infer causation in this case. Therefore, we find the trial court’s refusal to apply the doctrine was not manifestly erroneous.
| .CONCLUSION
Accordingly, for the reasons given, we affirm the judgment of the trial court.
AFFIRMED.

. Counsel for defendant Amy Wallace then moved for an involuntary dismissal, asserting that the plaintiff had failed to demonstrate that any negligence on the part of his client had caused and/or contributed to the fire. The trial'judge, after stating on the record that she believed there was a compelling case for involuntary dismissal, nevertheless denied the motion, reasoning that because Ms. Heck-man’s deposition was already in evidence, allowing the other defendant to present her evidence would make a complete record in case of appeal.

. Amy Wallace, whose actual name at the time of trial was Amy Wallace Misok, testified that she had married her fiancé in March of 1999.