TERRI F. LOVE, Judge.
11 This appeal arises from a one vehicle accident wherein an eighteen wheeler hauling lumber turned over. The driver, who died prior to trial, filed suit against the company responsible for loading the trailer. The trial court found that the plaintiff failed to prove negligence on the part of the company that loaded the trailer. We find that the trial court did not commit manifest error and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Wesley Bolton was a truck driver for Midtown Trucking and was hauling a load of lumber away from Sea-Mar Warehousing and Logistics, Inc. (“Sea-Mar”). As Mr. Bolton was negotiating a turn on St. Bernard Highway, his truck fell over onto the right side and allegedly caused Mr. Bolton physical injuries and damage to his truck.
Mr. Bolton filed a petition for damages against Sea-Mar and its insurer, Mt. Haw-ley Insurance Company (“Hawley”). He alleged that the load of lumber was improperly loaded by Sea Mar, which caused *838 a load shift to topple the truck. A petition of intervention was then filed by the Louisiana Commerce and Trade Association Self-Insurer’s Fund (“LCTASF”) as the workers’ compensation |aprovider for Midtown Trucking.[1] Mr. Bolton subsequently passed away. Melanie Dillon, the mother and tutrix of Amya Bolton, Mr. Bolton’s sole descendant and hem, filed a supplemental and amended petition to substitute for Mr. Bolton in the proceedings.
Sea-Mar then filed a motion for summary judgment, alleging that the accident was caused solely by Mr. Bolton’s negligence, which the trial court denied. Following a judge trial, the trial judge found in favor of Sea-Mar and dismissed all claims. LCTASF’s intervention was also dismissed because the trial court found that Mr. Bolton[2] did not prove Sea-Mar’s alleged negligence. Mr. Bolton’s devolu-tive appeal followed.
Mr. Bolton alleges that the trial court erred in not applying the doctrine of res ipsa loquitur and by finding that Mr. Bolton failed to prove the alleged negligence of Sea-Mar.

STANDARD OF REVIEW

The manifestly erroneous or clearly wrong standard of review is utilized when reviewing findings of fact made by the trial judge. S.J. v. Lafayette Parish Sch. Bd., 09-2195, p. 12 (La.7/6/10), 41 So.3d 1119, 1127. “Reversing the ... factual findings requires that we find that no reasonable factual basis exists for the trial court’s findings and that the findings are clearly wrong or ‘manifestly erroneous’ according to the record”. Dahan Novelties & Co., LLC v. Ohio Cas. Ins. Co., 10-0626, p. 1 (La.App. 4 Cir. 10/20/10), 51 So.3d 129, quoting Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). “[W]here two permissible views of the evidence exist, the factfinder’s choice between them |scannot be manifestly erroneous or clearly wrong.” Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880, 883 (La.1993).
“When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). “[Ojnly the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Id. However, when “documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’s story,” manifest error may be found. S.J., 09-2195, p. 13, 41 So.3d at 1127. If “a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.” Rosell, 549 So.2d at 845.

PROOF OF NEGLIGENCE

Mr. Bolton alleges that there was “more than sufficient evidence” to support the negligence claim against Sea-Mar and that the trial court should have accepted his expert’s testimony “wholly.” These assignments of error are based on the premise that the trial judge erred by finding that Mr. Bolton failed to prove Sea-Mar’s negligence.
*839 Gary Adams, a St. Bernard Parish Sheriffs Officer,[3] arrived at the scene of the accident to find Mr. Bolton’s truck lying on its side with a portion of the truck on the train tracks and no measurable skid marks. Mr. Adams testified that the speed limit prior to the turn was thirty five miles per hour. However, the speed |4Iimit in the turn was fifteen miles per hour and a triangular sign with an arrow pointing to the left indicated as such. Mr. Adams stated that Mr. Bolton indicated that he was driving thirty five miles per hour. Additionally, Mr. Bolton completed an official statement regarding the accident wherein he stated that he was driving thirty five miles per hour. Mr. Adams did not issue any citations, but stated that he could have written “a number of them” including a citation for careless operation. However, Mr. Adams testified that he usually does not write citations when there is no major property damage or major bodily injuries. Mr. Adams testified that the decision to issue Mr. Bolton a citation was within his discretion.
Wayne Winkler, Mr. Bolton’s expert in accident investigation and reconstruction, testified that, after reviewing the evidence, he believed that Mr. Bolton’s truck was traveling at a relatively low speed or stopped when it turned over. Mr. Winkler stated that if Mr. Bolton entered the curve going thirty five miles per hour, then his truck would have immediately rolled and continued to slide. Additionally, Mr. Winkler believed that the truck was loaded heavier on the right side, which would have increased the propensity for the trailer to roll onto its right side at a lower speed. Overall, Mr. Winkler concluded that “the truck and trailer were traveling well less than 15 miles per hour at the point that it rolled over and came in contact with the ground.” Mr. Winkler found that, more probable than not, Mr. Bolton’s operation of the truck was not the cause of the accident. Instead, Mr. Winkler testified that the sole cause of the accident was an insufficient support of the load of lumber.
Mr. Bolton’s redacted deposition was used in lieu of live testimony due to his untimely passing prior to trial. He stated that he had approximately five years of experience of driving eighteen wheelers after attending Diesel Driving [ ¡Academy. Mr. Bolton testified that he was not drinking nor using illegal drugs on the day of the accident. He stated that the lumber was loaded from the front to the back with an open space in the middle and that he did not notice anything out of the ordinary about the way the lumber was loaded. In the deposition, Mr. Bolton testified that he was driving thirty five miles an hour prior to the turn, but began to slow down before the turn. He stated that his estimated speed at the beginning of the turn was between twelve and fifteen miles per hour. However, Mr. Bolton’s signed statement from the scene of the accident stated: “I was coming down St. Bernard Highway going 35 mphs [sic]. When my truck shifted to the right, [sic] And feel [sic] on the right side.”
Sea-Mar called Angella Bauer, a past office manager and terminal dispatcher for Sea-Mar, who testified that the truck drivers are responsible for checking the trailer to ensure it is loaded correctly.
Keith Arabie, a Sea-Mar warehouse supervisor from 2002-2005, loaded Mr. Bolton’s trailer on the day of the accident. Mr. Arabie testified that Mr. Bolton’s load of lumber consisted of three bundles across and two bundles high of 2 x 10s. He stated that the way he loaded the truck, the lumber could not have shifted *840 more than an inch or two and, like Ms. Bauer, stated that drivers are required to check their loads. Mr. Arabie testified that he loads the trailers so that the weight is evenly distributed. However, he did not have paperwork to document the trailer’s contents because it was destroyed in Hurricane Katrina.
Dennis Papaleo, Sr., the vice-president of Sea-Mar, went to the scene of the accident. Mr. Papaleo testified that he neither saw the load nor gave instructions on how to reset the load. However, Mr. Pa-paleo stated that he told the employees to do whatever had to be done to fix the load for another truck. Again, he |fireiterated that he never told Mr. Arabie specifically how to reset the load.[4] Mr. Papaleo testified that Mr. Arabie would be able to calculate the weight distribution and safety of the load to avoid load shifting due to training. As to the picture of the load of lumber after the accident, Mr. Papaleo stated that some of the boards were displaced and/or removed because the wrecker employees had to move some of the boards to stabilize the trailer for the drive back to Sea-Mar’s facility.
The trial judge stated, in his reasons for judgment, that Mr. Bolton was “unable to prove negligence on the part of the Defendant, Sea Mar by a preponderance of evidence.” As to Sea-Mar’s alleged negligence, the trial judge stated, “[wjhile an unbalanced load may have caused the trailer to tip, this is not evidence that the lumber was not properly loaded by defendant, Sea Mar.” The trial judge further weighed and opined on the contradictory testimony of Mr. Winkler and Mr. Arabie regarding the configuration of the load of lumber. Mr. Arabie was found to be a credible witness. Great deference is given to the credibility of witness’ because the trial court is in a more opportune position to judge credibility based on mannerisms, intonation, and behavior. Finally, the trial judge stated:
[ajfter trial it is simply not clear what caused the load to be unbalanced. Whether the unbalanced load resulted from improper loading, improper driving, traffic conditions, road condition and/or a combination of any of the foregoing is simply speculation. Accordingly, plaintiff has not met the burden of proof imposed by law.
This Court’s review of the record reveals that the trial judge’s factual conclusions were reasonable. The trial judge heard the conflicting testimony of Mr. Winkler and Mr. Arabie as to the loading of Mr. Bolton’s load of lumber. The |7trial judge was also presented with an official statement signed by Mr. Bolton stating that he was speeding before the accident. However, Mr. Bolton, in his deposition testimony, stated that he was driving around twelve to fifteen miles per hour going into the turn before the accident. Given the testimony and evidence, we cannot say that the trial court committed manifest error in finding that Mr. Bolton failed to prove Sea-Mar’s negligence.

RES IPSA

Mr. Bolton alleges that the trial judge erred by refusing to apply the doctrine of res ipsa loquitur and by failing to mention res ipsa loquitur in its reasons for judgment.[5]
*841 The doctrine of res ipsa loquitur means “the thing speaks for itself.” Certain Underwriters at Lloyd’s, London v. Wallace, 03-2027, p. 8 (La.App. 4 Cir. 8/25/04), 882 So.2d 1173, 1178. “Res ipsa is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant’s negligence, more probably than not, caused the injury.” Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La.1992). Res ipsa loquitur “must be sparingly applied.” Id. Applying res ipsa lo-quitur requires three elements:
1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence by defendant; 2) the defendant had exclusive control of the thing causing the damage; and 3) the only reasonable and fair conclusion is that the accident was due to the defendant’s breach of a duty.
Small v. Baloise Ins. Co. of Am., 96-2484, p. 12 (La.App. 4 Cir. 3/18/98), 753 So.2d 234, 242.
First, the facts surrounding the accident were not unusual. Second, Sea-Mar did not have exclusive control over the load of lumber once Mr. Bolton left the facility. Third, there were other explanations for the accident, such as Mr. Bolton’s disputed speed.
The trial judge stated, in his reasons for judgment, that “the accident must be attributed to something other than a load shift.” Further, the trial judge opined that “[wjhether the unbalanced load resulted from improper loading, improper driving, traffic conditions, road conditions and/or a combination of any of the foregoing is simply speculation.” Given this reasonable finding based upon the conflicting evidence of Mr. Bolton’s speed entering the turn and how the lumber was loaded, we do not find that the trial court erred because res ipsa loquitur was not a proper adjudication under the facts and circumstances of this case.

DECREE

For the above mentioned reasons, we find that the trial court did not commit manifest error and affirm.
AFFIRMED.
ARMSTRONG, C.J., Concurs.

. LCTASF sought indemnification out of Mr. Bolton's possible monetary recovery if his claims were successful.

. This Court is aware that Amya Bolton took the place of Mr. Bolton after his death. However, we continue to utilize his name throughout this opinion to avoid confusion.

. Mr. Adams is now retired.

. Mr. Bolton attempted to impeach this testimony with Mr. Arabie's deposition wherein he stated that he gave instructions.

. This Court notes that a trial court’s silence as to part of a plaintiff’s claim constitutes a rejection of that part of the claim. Brady v. Am. Ins. Co., 198 So.2d 907, 914 (La.App. 4th Cir.1967). Thus, this argument is without merit.